J. F. JOHNSON, Appellee, v. J. W. BALLOUN, Appellant.

**BILLS AND NOTES: Place of Payment—Agreement for Change.** The
1   place of payment of a promissory note, as recited therein, is a material part of the instrument, and a change of such place must be effected by the mutual agreement of the parties. Evidence held to establish such an agreement.

**MORTGAGES: Maturity—Accelerating Clause—Presentment and De-**
2   **mand.** A mortgagee who has the option to declare the secured debt due for the nonpayment of interest is under no obligation to present the note at the specific place for payment recited in the note and demand payment of the interest.

Headnote 1:  8 C. J. p. 202.  Headnote 2:  27 Cyc. p. 1523.

*Appeal from Poweshiek District Court.*—H. F. WAGNER, Judge.

JULY 1, 1925.

REHEARING DENIED JANUARY 22, 1926.

ACTION on a note executed by defendant for $13,500, and to foreclose a mortgage given to secure payment on 120 acres of land, on account of default in payment of the annual interest due March 1, 1924. The defense is based upon a claimed oral agreement by which the place of payment of interest designated in the note was changed, and that the interest due March 1, 1924, was tendered at the changed place agreed upon, before it was due. Judgment and decree of foreclosure were entered in favor of plaintiff. Defendant appeals.—*Reversed.*

*M. W. Hyland* and *Clyde McFarlin*, for appellant.

*Frank Bechly*, for appellee.

ARTHUR, J.—I. The vital and decisive issue in the case is one of fact. There can be no controversy as to the law applicable, once the question of fact is determined.

The note and mortgage in suit were executed to one J. G. Johnston on March 1, 1916. In November, 1921, plaintiff became the owner of the note and mortgage by assignment. The

1. BILLS AND NOTES: place of payment: agreement for change. note bears interest at 5 per cent per annum, payable annually, and by its terms the principal of the note becomes due March 1, 1927. The note provides for the payment of principal and interest at the First National Bank of Chelsea, Iowa. The petition is in the ordinary form. The answer admits the allegations of the petition, except that the indebtedness is due. The defense of abatement averred is that, on or about November 17, 1921, it was orally agreed between plaintiff and defendant that in the future the interest payments would be made at the Chelsea State Bank, instead of the First National Bank of Chelsea. The answer also alleges tender of the interest due March 1, 1924, on February 29, 1924, and that said tender has since been kept intact, and offers payment of the same to plaintiff.

Plaintiff denies that any such agreement was made or talked about. Thus the issue of fact is presented. The parties themselves are the only witnesses testifying concerning the alleged agreement. Their testimony, which will be later set forth, is in direct conflict.

The mortgage provides:

"It is stipulated that a failure to pay any of the said interest within thirty days after it becomes due, shall cause the whole of said money to become due, and this mortgage may be foreclosed thereupon immediately, for the whole of said money and interest."

On April 19, 1924, this action was commenced.

II. The place of payment of an obligation, as recited in a written instrument, is a material part of the instrument (Negotiable Instrument Law, Section 3060-a125, Code Supplement,

1913), and a change must be effected by agreement or consent of both parties. *Farmers Sav. Bank v. Roe*, 195 Iowa 137.

In their brief, counsel for appellant advance the proposition that, to entitle plaintiff to exercise his election to declare the whole amount of the note due for default in payment of interest, presentment for payment at the First National Bank of Chelsea, where, by its terms, the note is payable, was required. This proposition is untenable, under the facts and circumstances in this case. Counsel do not press it in argument. *Collins v. Nagel*, 200 Iowa 562.

2. MORTGAGES: maturity: accelerating clause: presentment and demand.

III. Balloun testified that his agreement with Johnson that the interest was to be paid at the Chelsea State Bank was made in March, 1922, shortly after he had paid the interest due March 1, 1922, when Johnson was at his place, looking at some hogs; that he paid the interest due March 1, 1922, by leaving a check for same at the Chelsea State Bank, and called Johnson up and told him that he had left the check there for him; that, about two weeks later, he had a conversation with Johnson, in which he asked Johnson if it was all right to leave the money at the Chelsea State Bank, and Johnson said it was all right; that he did his business with Frank Sells, cashier of that bank, anyway; that this conversation took place about a week or two after the first of March, 1922; that that was the time and place of the agreement that the interest was to be paid at the Chelsea State Bank; that "that is the only agreement I had with him; that conversation was at my house;" that he left a check at the Chelsea State Bank, to pay the interest due March 1, 1923, and called Johnson up by telephone, and told him he had left the check for him there; that he left the check for payment of $675 interest due March 1, 1924, at the Chelsea State Bank on February 29th, but did not notify Johnson that he had left said check at the bank for him; that "I was moving, and it kind of slipped my mind; I thought Mr. Sells would put it on his books;" that Johnson had told him that he did business at the Chelsea State Bank; that, if Johnson had not done any business at the Chelsea State Bank for two years, he did not know it; that he did not know whether or not Johnson transacted

any other business at the Chelsea State Bank besides receiving the interest checks which he had left there for him.

On cross-examination, having his attention called to his answer filed in the case wherein it is alleged that the agreement took place about the 17th of November, 1921, Balloun testified:

"I swore that I had an agreement with him, which might have been about November 17, 1921, to pay the interest at the Chelsea State Bank. I mentioned it to him again after I paid the interest. I think the original agreement was in November, 1921. I do not recall just where it was. Mr. Johnson and myself only were present. I asked him if it was all right to pay the interest there, and he said it was all right to pay it at the Chelsea State Bank. * * * I could not say the exact date of the agreement, I am just guessing at it. * * * I wasn't when I swore to the answer. Yes, there was an agreement that the interest should be paid at the Chelsea State Bank. It was in 1922; I recollect that."

Frank Sells, cashier of the Chelsea State Bank, testified that he knew both parties; that Johnson was a customer at his bank on March 1, 1922; that Balloun, on February 29, 1922, left with him a check in favor of Johnson for payment of the interest on his note due March 1, 1922; that Johnson called at the bank, received and indorsed the check and deposited it; that, at the time, Johnson paid a note due at the bank out of the proceeds of the check, and left the balance, of $108.66, in the bank; that, on February 29, 1924, he wrote out a check for Balloun for $675, payable to Johnson, and Balloun signed it and left it with him; that no one ever called for the check; that Balloun had sufficient funds on deposit in the bank to pay the check, and still has sufficient funds there to pay the check; and that it would be paid at any time, if presented.

Johnson testified that he came into possession of the note and mortgage about the 5th of December, 1921; that he received the note from the attorney of the executor of his father's estate; that he never had or saw the note before that time; that he never had any agreement or conversation at any time with Balloun about paying interest at the Chelsea State Bank; that

Balloun called him by telephone and told him that the 1922 interest was at the Chelsea State Bank for him; that Balloun said:

"I left the check at the Chelsea State Bank for you; that's all he said. Whether for interest or not, I don't know,—I didn't want to ask. He called me up again in 1923, and said he left a check for me at the bank. He didn't call me up at any other time and tell me about it."

On cross-examination, Johnson testified that he called at the Chelsea State Bank in March, 1922, and in March, 1923, and received checks left there for him by Balloun for those two years, and got the money on them; that he never asked Balloun at any time for the interest due March 1, 1924,—"never was close enough to him to ask him;" that he was in telephonic communication with him; that "I could have telephoned him, but he could have telephoned me, too, that he had left the money there, but he didn't do it;" that he never called at the Chelsea State Bank to see if the 1924 interest was there for him; that nobody informed him it was there, and he had no business in there, and did not go; that he never went to the First National Bank to ask if the interest was paid in there; that:

"I didn't have any business to do that. I am at Chelsea nearly every day, but they never told me it was there. I would be foolish to ask for the interest,—the money; they might tell me they did not have any there. I didn't have any business in there, so I didn't go in."

He also testified that he had no notice that the interest was at the Chelsea State Bank; that, if he had, he would have gone in and got it, for he needed it; that he bought a farm, and had to borrow $12,000, and the money would have been useful to him; that he talked with Balloun in February, and told him he had bought a farm, and had to borrow considerable money, but that Balloun did not say anything about leaving the interest money at any place for him; that the interest was not due when he had this talk with Balloun, and he didn't ask Balloun for the interest; that he didn't go to the First National Bank to see if the interest was paid there. "I never had any interest in there. If he should have left it there, wouldn't they have notified me?"

IV. It appears, without dispute, in the oral testimony, and the exhibits in evidence show, that the interest payments due March 1, 1922, and March 1, 1923, were paid by checks drawn on the Chelsea State Bank, and left by Balloun at said bank; that Balloun informed Johnson by telephone that he had left the checks for him at the bank; that Johnson called and got the checks, cashed them, and indorsed payments of interest for these two years on the note. It appears that, on February 29, 1924, Balloun went to the Chelsea State Bank, and at his request, Sells, cashier, wrote a check for him, bearing that date, for $675, for payment of the interest due March 1, 1924, payable to the order of Johnson; that Balloun signed the check, and left it with the cashier. The cashier held the check at the time of the trial, and Balloun had money in the bank sufficient to pay it. The money for the payment of interest due March 1, 1924, is tendered to Johnson in court.

The burden of proof, of course, was on appellant to establish the agreement claimed by him, changing the place of payment of the interest installment from the First National Bank to the Chelsea State Bank. We think appellant has successfully borne that burden. Chelsea is a village. The two banks are located a block apart. Johnson was in town nearly every day. He did not inquire at either bank to learn whether or not his interest due March 1, 1924, had been left for him. His explanation for not going to either bank for his interest is that he "did not have any business there," and "it would be foolish to ask for interest; they might tell me they didn't have any there." We think the facts and circumstances corroborate appellant's claim that he and appellee had the agreement or understanding claimed by appellant.

Upon the whole record, we think the conflict of evidence between these parties on the question as to the claimed agreement must be decided in favor of appellant, and abatement of the action ensue. Accordingly, the judgment and decree entered below must be, and are, reversed.—*Reversed.*

FAVILLE, C. J., and EVANS, STEVENS, DE GRAFF, and ALBERT, JJ., concur.